IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LARRY AARON, et al.,** | ] |
| **Plaintiffs,** | ] |
| v. | ] CV-07-BE-0456-S |
| **ABC ACQUISITION, INC., et al.,** | ] |
| **Defendants.** | ] |

### MEMORANDUM OPINION

This case came before the court on Plaintiffs' motion to remand (doc. 21). During the briefing on Plaintiffs' motion, the Eleventh Circuit Court of Appeals decided *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007), which limits a district court's evaluation of its removal jurisdiction to consideration of only the notice of removal and documents from the plaintiff. Under *Lowery*, the court would remand this case because neither the notice of removal nor any document from the Plaintiffs unambiguously establishes that the amount in controversy requirement is satisfied. Because the parties dispute the binding nature of *Lowery*, the court set a hearing to determine whether Defendants have demonstrated by a preponderance of the evidence, as that standard was applied prior to *Lowery*, that the aggregate amount in controversy requirement is satisfied. For the reasons stated below and on the record at the hearing held on September 5, 2007, the court concludes that Defendants have not shown that the amount in controversy exceeds $5,000,000, and, therefore, REMANDS this case to the Circuit Court of Jefferson County, Alabama.

## I. BACKGROUND

Plaintiffs in this case, 670 residents of the Wylam area of Jefferson County, Alabama, filed a complaint in the Circuit Court of Jefferson County against a number of industrial companies. Plaintiffs allege that each Defendant either (1) actually discharged particulates or gases into the atmosphere; (2) manufactured or sold equipment that discharged particulates or gases into the atmosphere; (3) designed or reviewed the design of equipment that discharged particulates or gases into the atmosphere; or (4) had a duty to inspect the operations of the other Defendants. As a result of these actions, Plaintiffs alleged that they suffered personal injuries and property damages.

Based upon these allegations, Plaintiffs bring the following causes of action: (1) negligence; (2) wantonness; (3) breach of duty to warn; (4) fraud, misrepresentation and deceit; (5) nuisance; (6) trespass; (7) outrage; (8) common law strict liability; (9) negligent infliction of emotional distress; and (10) intentional infliction of emotional distress. Plaintiffs seek a permanent injunction prohibiting Defendants from discharging harmful pollutants and requiring clean-up of Plaintiffs' properties; unspecified compensatory and punitive damages; and attorneys' fees and costs.

Defendants removed the case to this court as a "mass action" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11)(B)(I). Defendants averred that Plaintiffs, who number more than 100, bring claims exceeding $5,000,000, that one or more Plaintiffs' claims exceed $75,000, and that minimal diversity exists. Defendants' argument that the aggregate value of Plaintiffs' claims exceeds $5,000,000 is based primarily on jury verdicts and settlements in recent Alabama toxic tort cases. Second, Defendants state that "[s]atisfaction of the $5,000,000 aggregate amount in controversy requirement is further supported by the fact that the

plaintiffs seek an unspecified amount of punitive damages." Finally, in support of their argument, Defendants submitted two affidavits stating that, "[s]hould this Court grant plaintiffs' requested relief and require [a Defendant] to operate on a zero tolerance emissions basis, [that Defendant would suffer] . . . a loss . . . well in excess of $75,000."

After the Plaintiffs' moved to remand the case, the Eleventh Circuit Court of Appeals published its opinion in *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007). In *Lowery*, the Court of Appeals held that the notice of removal and documents from the plaintiff providing the basis for removal under 28 U.S.C. § 1446(b) must "unambiguously establish federal jurisdiction"; a district court may look to nothing more. 483 F.3d at 1213. Under *Lowery*, this case must be remanded because neither the notice of removal nor any document from the plaintiff unambiguously establishes that the amount in controversy exceeds $5,000,000. Several of the Defendants in this case, who were also defendants in *Lowery*, have petitioned the Court of Appeals for *en banc* review of *Lowery*. To date, the Court of Appeals has not granted rehearing *en banc*.

Defendants have orally argued that *Lowery* is not binding on this court at this time for two reasons: (1) the mandate has not issued; and/or (2) only an *en banc* decision can overrule prior Eleventh Circuit precedent. The first argument is unavailing. The internal operating procedures of the Eleventh Circuit recognize that "published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result." 11th Cir. R. 36-3, I.O.P.–2 (citing *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992)).

The court cannot resolve Defendants' second argument so quickly. The Eleventh Circuit does in fact follow "the absolute rule that a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc." *Bonner v. City of Prichard,*

*Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981). One might argue, however, that the Eleventh Circuit did not actually overrule any prior decisions in *Lowery*. The Court of Appeals itself noted that the issue in *Lowery* was "a matter of first impression in this circuit," 483 F.3d at 1198, and the Court was careful to distinguish or explain many of its prior seemingly inconsistent decisions. Interestingly, while the Defendants argue that *Lowery* did overrule longstanding precedent in holding that the district court's jurisdictional inquiry is limited to documents from plaintiffs, they argue that the district court can consider "similar" decisions in evaluating the amount in controversy, despite *Lowery*'s explicit dissatisfaction with that practice, because the Court "does not expressly overrule those cases . . . [that] employ the established practice of relying upon outcomes in similar cases." (Defs.' Resp. 6.)

Because of the parties' dispute regarding the scope and finality of *Lowery*, this court has repeatedly stayed this case pending further developments in *Lowery*. This practice, however, could result in endless litigation because the court must await a decision on the petition for rehearing *en banc* in *Lowery*, a decision on the merits of the rehearing if granted, and a possible Supreme Court appeal. Accordingly, the court set a hearing to determine whether the court must remand this case even without the *Lowery* decision. If the Defendants cannot carry their burden under pre-*Lowery* case law, they certainly could not prevail under *Lowery*, regardless of its ultimate outcome in the Court of Appeals and possibly the Supreme Court.

## II. DISCUSSION

In the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *See Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 972 (11th Cir. 2002). "'A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth

the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden.'" *Id.* (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001)). Rather, preponderance of the evidence requires "[t]he greater weight of the evidence," *Black's Law Dictionary* 1220 (8th ed. 2004) – that is, a demonstration that the amount in controversy "more likely than not" exceeds $5,000,000. *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). The court turns now to Defendants' evidence in this case.

  A.  "Similar" Cases

Prior to *Lowery*, a district court could "examine decisions rendered in cases on the same type of suit" to determine whether a defendant has shown that the claims exceed the amount in controversy requirement. *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F. Supp. 1388, 1391-92 (M.D. Ala. 1998); *see also Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1260 (N.D. Ala. 1999) (stating that "[t]he court will look to relevant Alabama case law to determine whether the jurisdictional amount is satisfied"). This practice is appropriate where the comparable cases "closely resemble the underlying litigation" and "contain[] similar claims and fact patterns." *Evans*, 76 F. Supp. 2d at 1260.

 In support of their argument that the amount in controversy requirement is met, Defendants offer five Alabama state and federal cases where damages awards exceeded the federal jurisdictional prerequisite. Defendants do little more than label each case as a "toxic tort" or "pollution" case and specify the damages awarded in each; but not all pollution cases are equal. After examining the underlying fact patterns of those cases, this court concludes that they do not "closely resemble" the instant case and, therefore, do not inform the court of the amount in controversy in *this* case.

In *Action Marine, Inc. v. Cont'l Carbon Inc.*, Civil Action No. 01-994 (M.D. Ala.), five plaintiffs, including the City of Columbus, Georgia, alleged that the defendants' production of Carbon Black, a commercial form of carbon used primarily in rubber products, paints, and plastics, released Carbon Black dust into the air. Carbon Black emissions are characterized as "oily, adhesive, and penetrating," and can cause a multitude of property damages. In addition, Plaintiffs alleged that this dust binds with other chemicals, creating carcinogens. Inspiration of the dust can cause lung scarring and other respiratory illnesses, including cancer. The jury awarded $1,915,000 in compensatory damages, $17,500,000 in punitive damages, and $1,294,000 in attorneys' fees and expenses.

Although the plaintiffs' *causes of actions* in *Action Marine* are similar to those in this case, the facts of the cases are quite different. First, Defendants have not demonstrated that the nature of the pollutant in this case is similar to the Carbon Black dust in *Action Marine*. The courts in *Action Marine* described Carbon Black as a particularly abhorrent pollutant and highly toxic substance. Nothing before the court in this case even suggests that the industrial dust at issue possesses the same egregious characteristics. Second, the property damages at issue in the two cases are very different. The property damage in *Action Marine* included municipal recreational and sports facilities, business property, and an inventory of boats in the vicinity of Columbus, Georgia. Here, the properties allegedly damaged are individuals' residential properties located in the Wyman area of Jefferson County, Alabama. Defendants have not demonstrated a similarity in property values.

Finally, the multi-million dollar punitive damages award in *Action Marine* was based on the defendants' reprehensibility. Specifically, the Eleventh Circuit Court of Appeals upheld the award based on the following factors: the defendants' "pattern of intentional misconduct . . .

leading to repeated damage"; the five-year duration of misconduct; the defendants' intentional and reckless actions, such as denying entry to environmental inspectors; the documented serious health hazards of Carbon Black; and the likely harm to "a great number of people and businesses who [we]re not parties to this litigation." *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1319-20 (11th Cir. 2007). Defendants have not demonstrated that the Plaintiffs in this case allege behavior rising to the same level of reprehensibility.

Defendants' reliance on *Russell Corp. v. Sullivan*, 790 So. 2d 940 (Ala. 2001) is likewise misplaced. The plaintiffs in *Russell*, whose number is not reflected in the opinion, were all residents of the Raintree subdivision located on Lake Martin. They alleged that the defendants, operators of textile plants, discharged into the Sugar Creek Wastewater Treatment Plant large volumes of wastewater containing dyes used in processing textiles. At least one of the dyes possessed carcinogenic properties. This wastewater constituted seventy to eighty percent of the five to six million gallons of wastewater that the Plant treated and released into Sugar Creek *each day*. Sugar Creek runs into Elkahatchee Creek, and, eventually, into Lake Martin.

The wastewater from the defendants' operations was of such a quantity and had such properties that it caused chemical imbalances in the treatment process and resulted in contaminant discharge into Sugar Creek. The contaminants were substantial enough that the lake water would dye fabrics, fecal coliforms would cling to the plaintiffs' piers, and foam would form wherever the lake water lapped onto the shore or piers. The plaintiffs alleged trespass and nuisance. A jury returned a verdict of $155,000 in compensatory damages and $52,000,000 in punitive damages. The Alabama Supreme Court reversed this verdict and entered judgment as a matter of law for all defendants – a fact Defendants failed to note..

Disregarding that the Alabama Supreme Court overturned the jury's verdict on appeal, the court concludes that Defendants have again failed to show that property damage in the Wyman area of Jefferson County is comparable to property damage around Lake Martin. In addition, the nature of the pollution – water pollution versus air pollution – is very different.

Defendants next cite to *Tolbert v. Monsanto*, Civil Action No. 01-1407 (N.D. Ala.). In *Tolbert*, the plaintiff, on behalf of over 1000 minor children, alleged that defendant Monsanto, which operated a chemical plant in Anniston, Alabama, regularly disposed of PCB, a carcinogenic toxic substance, for more than forty years by dumping the PCB into the sewer system and nearby landfills. Disposing of the PCB in this manner, the plaintiff alleged, polluted the soil and waters in Anniston. The defendants globally settled *Tolbert* and a number of federal and state cases for a total of $600,000,000. The settlement agreement acknowledged that the plaintiffs would not receive this entire amount; the plaintiffs received $300,000,000, and the remainder was split into relocation programs, clean-up funds, medical research donations, attorneys' fees, and other costs. The settlement documents – not cited by Defendants – indicate that the globally settled lawsuits included approximately 21,000 plaintiffs.

Once again, the *causes of action* in *Tolbert* are similar to the case before this court, but the facts are not. Rather than air pollution, the alleged harm in *Tolbert* was to soil and water caused by a chemical produced by the defendants over a period of *forty years*. In addition, this case was not adjudicated but *settled*. Moreover, the settlement included resolution of not only *Tolbert* but *numerous other lawsuits*, the details of which the Defendants have not provided. Finally, the number of plaintiffs in the combined settled cases – 21,000, including at least 1000 minor children – makes the case very distinct from this case, which involves approximately 670 Plaintiffs alleging primarily property damages.

Defendants describe the case of *Chandler v. Plantation Pipeline Co.*, Civil Action No. 98-122 (Cir. Ct. Hale County), as follows: "In late 2001, a Hale County, Alabama jury returned a verdict of $43.8 million . . . for property damages caused when gasoline leaked from the defendant's pipeline and migrated onto the plaintiffs' properties." This statement fails to describe a number of important factors that would aid the court in determining the similarity to the current case: the number of plaintiffs, details about the degree of leakage, and the specific causes of action. The final state court order in *Chandler* is sealed. Nonetheless, based only on Defendants' bare description, the court questions whether gasoline leakage into the soil is similar enough to air pollution to offer any guidance regarding the current case.

Finally, Defendants state that discovery in *Allen v. ABC Acquisitions, Inc.*, Civil Action No. 04-79 (Cir. Ct. Jefferson County), is "instructive as to the amount in controversy in the instant action." Defendants state that *Allen* was filed by ninety-nine plaintiffs living in the same area, and are represented by the same counsel, as the Plaintiffs in this case. Defendants then conclude that, "because the allegations are virtually identical to those in the lawsuit, discovery obtained from the *Allen* plaintiffs is instructive as to the amount in controversy in the instant action." Yet, rather than informing the court what the *Allen* discovery has shown, Defendants merely conclude that the damages in this case "need only amount to approximately $7500 per plaintiff in order for the aggregate amount in controversy to exceed $5,000,000." It may be true that $7500 per Plaintiff is a relatively low hurdle in toxic tort cases, but Defendants offered *no evidence* that each and every Plaintiff's claims more likely than not exceed $7500. This court would have to engage in unfounded speculation to conclude otherwise. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir.2003) (noting that a party's mere speculation that the amount in controversy met the jurisdictional threshold did not satisfy its

burden of proving beyond a preponderance of the evidence the claim at issue exceeded $75,000); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) (reversing this court's remand under CAFA's local controversy exception because plaintiffs' affidavits failed to present a credible estimate of the percentage of the plaintiff class who were Alabama citizens).

Consequently, Defendants have failed to show that any of the five cited cases "closely resemble" or "contain similar . . . fact patterns" as this case. These allegedly similar cases, therefore, do not demonstrate that Plaintiffs' claims, in the aggregate, "more likely than not" exceed $5,000,000.

### B.   Punitive Damages

Defendants next argue that Plaintiffs' claims "clearly exceed $5,000,000" because Plaintiffs seek an unspecified amount of punitive damages. Although Defendants are correct that the court should consider both compensatory and punitive damages in determining the amount in controversy, Defendants' conclusion that, because Plaintiffs have not specified damages, the amount in controversy "clearly exceed[s] $5,000,000," is unsupported. Conclusory statements establish nothing. *See Leonard*, 279 F.3d at 972 (stating that "a conclusory allegation . . . is insufficient to meet the defendant's burden"). As discussed above, Defendants have failed to identify any cases closely resembling this case to clarify the potential punitive damages.

### C.   Cost of Injunction

Defendants' final argument regarding the amount in controversy is that *each Plaintiff's* claim for injunctive relief alone exceeds $75,000 because each Plaintiff seeks an order enjoining Defendants from releasing pollutants and requiring Defendants to remove pollutants from Plaintiffs' properties. Obviously, if each Plaintiff's claim exceeds $75,000, then the aggregate amount in controversy exceeds $5,000,000. Defendants submitted two affidavits stating that

reducing emissions to zero would require facility shut-downs and employee terminations, which would cost each affiant's company "well in excess of $75,000."

The parties dispute whether the appropriate measure of the value of an injunction is the cost to Defendants or the value to the Plaintiffs. Similarly, Plaintiffs argue that Defendants' affidavits are based on an injunction they neither seek nor expect – *zero* emissions. The court need not address these arguments because, even under the interpretation more favorable to Defendants, Defendants' evidence fails to demonstrate that the amount in controversy exceeds *$5,000,000*.

Defendants' affidavits, if fully credited, instead show only that the *total* amount in controversy exceeds $75,000 – not that *each Plaintiff's* claim exceeds $75,000. The cost of shut-down, and therefore the cost of the injunction, should be the same regardless of the number of Plaintiffs. In fact, defense counsel admitted at the motions hearing that these affidavits do not assist the court in determining whether Plaintiffs' claims, in the aggregate, exceed $5,000,000, and instead were offered to show that one Plaintiff's claims exceed $75,000.

### III.  CONCLUSION

Under the standards applied prior to the Eleventh Circuit's recent decision in *Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007), Defendants have failed to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. The court is unpersuaded by the Alabama state and federal decisions upon which Defendants rely and will not engage in unsubstantiated speculation regarding the value of Plaintiffs' claims. As discussed above, each of those cases is based upon very different factual patterns than the case before this court. Because the amount in controversy requirement is not satisfied, the court concludes that it lacks subject matter jurisdiction over this case and REMANDS the case to the Circuit Court of

-12-

Jefferson County, Alabama, pursuant to 28 U.S.C. § 1447(c). The court will enter a separate order consistent with this memorandum opinion.

DATED this 7th day of September, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE